RENDERED: JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1163-MR

ASHLEY FERREIRAS                 APPELLANT

v.          APPEAL FROM KENTON CIRCUIT COURT
HONORABLE MARY K. MALLOY, JUDGE
ACTION NO. 23-CR-00769

COMMONWEALTH OF KENTUCKY            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, A. JONES, AND TAYLOR, JUDGES.

JONES, A., JUDGE: Ashley Ferreiras appeals from the trial court's judgment sentencing her to a term of eighteen months in prison following her conviction at a jury trial. After our review of the facts and the law, we affirm.

## I. BACKGROUND

During the late evening of May 4, 2023, Officers Fritsch and Ullrich were working a patrol shift as police officers for the City of Covington. Officer

Fritsch was a relatively new hire by the Covington Police Department, and Officer Ullrich was accompanying him that evening as his traffic enforcement field training officer. The two officers were on patrol in a marked police cruiser when, shortly before midnight, Officer Fritsch observed a sport utility vehicle (SUV) with one headlight out, an equipment violation.[1] The officers followed the SUV on to Nancy Street, intending to conduct a routine traffic stop for the violation, when they noticed the SUV had already pulled over to the curb. The officers parked, exited the cruiser, and approached the SUV. As they did so, they noticed the smell of marijuana wafting from the vehicle.

When Officer Fritsch collected the driver's information, he saw a number of issues which required further investigation. The SUV driver did not possess registration information or insurance for the vehicle. Additionally, although the driver possessed a valid license with no outstanding warrants, the license was issued by the state of Arizona, even though the driver stated he was currently a Kentucky resident residing on Nancy Street.[2] In addition to these issues, Officer Fritsch called dispatch with the vehicle's information, and he learned that the Ohio plate on the vehicle was registered to a BMW, and the SUV was not a BMW.

---

[1] Kentucky Revised Statute (KRS) 189.040.

[2] Under KRS 186.435, a licensed driver moving to Kentucky must apply for a Kentucky driver's license within thirty days.

As Officer Fritsch was conducting this investigation, Officer Ullrich heard a woman, later identified as Ferreiras, yelling at him from an adjacent building's second-story window. Officer Ullrich would later testify that this incident caught his attention for two reasons. First, bystanders do not normally insert themselves into routine traffic stops. Second, the woman in the window appeared to be topless.[3] Shortly thereafter, Officer Ullrich observed that Ferreiras, now clothed, had emerged from the home on crutches, with a bandaged foot, and began crossing her fenced yard toward the parked vehicles. It so happened that Ferreiras was the paramour of the SUV driver, she had been waiting for him to return home, and she had observed the flashing lights from the cruiser coming through her window.

As Ferreiras crossed the yard and approached her gate, Officer Ullrich informed her that she was not welcome at his stop, and he repeatedly ordered her to go back to her yard, behind the gate. Ferreiras did not comply and began arguing with Officer Ullrich. Officer Ullrich later testified that she smelled of stale beer and appeared to have slurred speech and glassy eyes. Ferreiras's brother had also emerged from the house, but two other officers on bicycles had arrived as support, and they warned Ferreiras's brother to return to the yard. Unlike Ferreiras, her brother complied with the officers' instructions.

---

[3] At trial, Ferreiras vigorously denied that she was unclothed at the time of this incident.

-3-

Meanwhile, Ferreiras continued to argue with Officer Ullrich instead of returning to her yard. Officer Ullrich offered Ferreiras the choice of either returning to her yard or going to jail. When she did not comply, Officer Ullrich stated that she was now under arrest. By this time, Officer Fritsch had returned from the cruiser to aid Officer Ullrich. The two officers approached Ferreiras to remove her crutches, because she would need to be handcuffed and placed inside the cruiser. Officer Ullrich also believed that the crutches posed a potential hazard to officer safety if Ferreiras decided to use them as bludgeoning weapons.

The attempt to remove Ferreiras's crutches led to a scuffle between Ferreiras and the two officers. As Officer Fritsch removed one crutch and tried to support her weight, Ferreiras responded by elbowing him in the nose. This act broke Officer Fritsch's eyeglasses and knocked them off of his face. The blow also simultaneously led to Officer Fritsch losing his hold on Ferreiras. This sudden lack of support resulted in the three individuals losing their balance and tumbling to the ground. A brief but vicious altercation ensued. Ferreiras fought as the officers were putting her in handcuffs, kicking Officer Ullrich and biting his forearm. Officer Ullrich later admitted that he responded to the bite by punching Ferreiras in the head. The officers then gained control of Ferreiras's arms, handcuffed her, and placed her in the cruiser. As the officers tried to close the cruiser's door, Ferreiras kicked it open, causing the door to nearly strike Officer

Ullrich in the process. Eventually, the officers were able to securely shut the car door with Ferreiras inside.

After Ferreiras was in custody, the officers were able to return to their traffic stop. The incident with Ferreiras had delayed the business of the stop by about ten minutes. The SUV driver was cited for the traffic violations and released. The SUV itself was impounded. Ferreiras's brother, who stayed in the yard as directed, was not cited or charged with an offense. For Ferreiras, however, the incident had more severe consequences. The Kenton County grand jury indicted Ferreiras on two counts of third-degree assault,[4] one count of third-degree criminal mischief,[5] and obstructing an emergency responder.[6]

Several weeks before trial, Ferreiras filed a civil suit pursuant to 42 United States Code ("U.S.C.") § 1983 against the City of Covington, Officer Fritsch, and Officer Ullrich, alleging excessive force and deprivation of her rights under the United States Constitution. The Commonwealth filed a motion *in limine* to prohibit references to Ferreiras's injuries or the federal civil suit at trial, arguing

---

[4] KRS 508.025, a Class D felony.

[5] KRS 512.040, at that time a Class B misdemeanor. The General Assembly recently repealed KRS 512.040 when it recodified the criminal mischief offenses. Previously, third-degree criminal mischief covered property damage amounting to less than $500.00. The General Assembly has amended the statutes so that first-degree criminal mischief applies to property damage of $500.00 or more, second-degree criminal mischief is for damage less than $500.00, and third-degree criminal mischief no longer exists. *See* 2024 Ky. Acts ch. 174 §§ 10, 11, 54. (effective Jul. 15, 2024).

[6] KRS 525.015, a violation for a first offense.

such testimony or evidence was not relevant, could confuse the issues, or could mislead the jury. Further, the Commonwealth argued that references to the civil suit lacked probative value outweighing the danger of undue prejudice. Ferreiras argued that she had the right to introduce evidence from the civil suit for impeachment value or to explore bias regarding Officer Ullrich's testimony. The trial court heard arguments and granted the Commonwealth's motion, ruling that the civil suit matter involved mere allegations and were not relevant unless the "door was opened" in some fashion.

The trial court conducted a three-day trial ending on June 27, 2024. The jury heard narrative testimony from Officers Fritsch and Ullrich, as well as one of the supporting bicycle patrol officers, describing the incident leading up to Ferreiras's arrest. The Commonwealth also showed the jury video footage of the incident taken from the officers' body cameras. Ferreiras and her brother both testified for the defense. The defense argued Ferreiras never formed the requisite *mens rea* to intend criminal acts, her injured leg prevented her from assaulting the officers, and she was a victim of Officer Ullrich's overly aggressive behavior. After its deliberation, the jury found Ferreiras guilty of resisting arrest,[7] third-degree criminal mischief, obstructing an emergency responder, and third-degree assault. The jury recommended sentencing as follows: sixty days' incarceration

---

[7] KRS 520.090, a Class A misdemeanor. The trial court included resisting arrest as a potential lesser-included offense to third-degree assault.

and a $500 fine for resisting arrest; a $100 fine for third-degree criminal mischief; a $100 fine for obstructing an emergency responder; and a prison sentence of one year and six months for third-degree assault. On August 30, 2024, the trial court entered final judgment sentencing Ferreiras in accord with the jury's recommendation. This appeal followed.

## II. ANALYSIS

Ferreiras presents three overarching issues on appeal. First, she argues the trial court erred when it limited the scope of her cross-examination of Officers Fritsch and Ullrich. Second, Ferreiras contends the trial court abused its discretion when it failed to consider probating her sentence. Third, Ferreiras argues that Officer Ullrich lacked probable cause to arrest her for any crime. We consider each issue below.

In her first argument, Ferreiras contends the trial court erroneously curtailed her ability to cross-examine the Commonwealth's witnesses. Specifically, she argues that she: (1) should have been allowed to cross-examine the officers about the potential bias against her in light of the allegations in her federal civil suit, and (2) should have been permitted to cross-examine Officer Ullrich about his training and Officer Fritsch's status as a trainee.

"In Kentucky, the trial court's rulings concerning limits on cross-examination are reviewed for abuse of discretion." *Davenport v. Commonwealth*,

177 S.W.3d 763, 771 (Ky. 2005) (citing *Nunn v. Commonwealth*, 896 S.W.2d 911, 914 (Ky. 1995)). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). "The right to cross-examine witnesses is . . . an essential aspect of the Sixth Amendment Confrontation Clause . . . [b]ut that right is not absolute," and "trial courts have broad discretion to impose reasonable limits on such cross-examination[s.]" *Newcomb v. Commonwealth*, 410 S.W.3d 63, 85 (Ky. 2013) (internal quotation marks and footnotes omitted). "So long as a reasonably complete picture of the witness' veracity, bias and motivation is developed, the judge enjoys power and discretion to set appropriate boundaries." *Holt v. Commonwealth*, 250 S.W.3d 647, 653 (Ky. 2008) (quoting *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997)).

Here, Ferreiras asserts that the jury should have been permitted to learn about her pending civil suit against the police officers, arguing that this would have shown the jury the potential for bias in the officers' testimony. For its part, the Commonwealth asserts that this issue was not properly preserved by a contemporaneous objection. Alternatively, the Commonwealth asserts that the trial court did not abuse its discretion in limiting the scope of cross-examination.

-8-

We cannot agree with the Commonwealth that the issue is unpreserved. The Commonwealth filed a motion *in limine* specifically referencing civil suits against the officers or injuries received by Ferreiras as a result of this incident. (Record (R.) at 43.) Ferreiras filed a memorandum opposing the Commonwealth's motion (R. at 51), and the trial court heard arguments on the motion in a pretrial hearing. "Motions *in limine* can preserve issues for appellate review, provided they are sufficiently detailed about what the moving party intends to exclude." *Brown v. Commonwealth*, 553 S.W.3d 826, 836 (Ky. 2018) (quoting *Montgomery v. Commonwealth*, 505 S.W.3d 274, 280 (Ky. App. 2016)). The lack of a contemporaneous objection is no obstacle to preservation in such instances. *Id*. For these reasons, we deem this matter to have been adequately preserved.

That said, we agree with the Commonwealth that the trial court did not abuse its discretion in restricting references to the civil suits. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Davenport*, 177 S.W.3d at 768 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674, 683 (1986)) (emphasis omitted). Moreover, "evidence should have some proclivity to demonstrate impropriety or partiality beyond abject speculation. When it does not,

the trial court is well within its purview in limiting evidence[.]" *Holt*, 250 S.W.3d at 653.

Ferreiras's generic claim that she was prevented from showing bias will not suffice to show an abuse of discretion. Despite the trial court's ruling forbidding mention of the civil suits, Ferreiras was permitted to cross-examine the officers regarding their use of force during the altercation, including extensive questioning about the officers' Use of Force Report, which they filed after the incident. Ferreiras was also able to specifically cross-examine Officer Ullrich and elicited testimony regarding how he punched Ferreiras in the head while she was on the ground. Ferreiras was also able to cross-examine the officers about their actions in the body camera video footage, and the jurors were able to view those actions for themselves.

In short, even though Ferreiras could not bring up the civil suit itself, the trial court provided her with ample opportunity to cross-examine the officers about the aspects of the incident which formed the basis for her civil claims. Under the circumstances, the jury received "a reasonably complete picture of the witness' veracity, bias and motivation[.]" *Holt*, 250 S.W.3d at 653. We cannot say the trial court abused its discretion when it limited Ferreiras's cross-examination to exclude specific mention of the civil suit.

Similarly, Ferreiras's assertion that the trial court improperly restricted her from asking questions about the officers' training is likewise unfounded. Ferreiras argues that the trial court violated her right to cross-examine the officers regarding their training for impeachment purposes. Her argument to the trial court, on the morning of the trial, was that the officers may have violated a policy on deescalation prior to the use of physical force. However, the trial court agreed with the Commonwealth that this training issue was not directly relevant to the question of whether Ferreiras was guilty of the crime of assaulting a police officer. The trial court left open the possibility that the officers' testimony could open the door to admitting the training issue under impeachment, but otherwise barred Ferreiras from pursuing this avenue.

We start by noting that the proposed inquiry into the officers' training for possible impeachment is a collateral matter to whether Ferreiras was guilty of the counts in the indictment. Issues regarding collateral impeachment are closely related to those regarding relevancy. *Commonwealth v. Prater*, 324 S.W.3d 393, 397 (Ky. 2010). As such, "the trial court has discretion to determine whether or not to permit impeachment on collateral issues when a party has opened the door to such issues by raising them in direct testimony." *Id*. at 399. Here, the trial court's ruling was squarely within the bounds described in *Prater*. Furthermore, despite its ruling, it is noteworthy that the trial court allowed Ferreiras to briefly explore

this issue in Officer Fritsch's cross-examination, touching upon whether the use of force in this case was in keeping with his training and whether grabbing Ferreiras's crutches or the use of force was necessary.[8] Based on these considerations, we discern no abuse of discretion by the trial court in how it chose to limit cross-examination regarding the officers' training.

In Ferreiras's second issue on appeal, she contends the trial court abused its discretion when it failed to consider probating her sentence. The Commonwealth asserts that this question is moot, as Ferreiras is no longer in the custody of the Kentucky Department of Corrections. Ferreiras admits in her brief that she was granted parole on December 5, 2024. (Appellant's Brief at 5.) In response, Ferreiras contends that being denied probation "can carry collateral consequences such as impacts on employment, civil rights, and reputational harm." (Appellant's Reply Brief at 7.) Ferreiras fails to cite any relevant authority supporting this premise; her direct citation to *Howard v. Commonwealth*, 496 S.W.3d 471, 475 (Ky. 2016), merely describes how a trial court retains "immense discretion in setting criminal penalties[,]" without any discussion of collateral consequences for a denial of probation. *Id.* (footnote omitted). Furthermore, the collateral consequences to which Ferreiras alludes are typically attributed to a

---

[8] When questioned about the choice to use force, Officer Fritsch simply answered, "The situation required it." However, the officer also admitted during cross-examination that Ferreiras had not actually used the crutch as a weapon when it was removed from her.

guilty plea or a conviction, not an adverse probation decision. *See, e.g.*,

*Commonwealth v. Pridham*, 394 S.W.3d 867, 872 (Ky. 2012) (discussing adverse

immigration consequences as the result of a plea in the case of *Padilla v. Kentucky*,

559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)).

We agree with the Commonwealth that this issue is moot. "[A] 'moot

case' is one which seeks to get a judgment . . . upon some matter which, when

rendered, for any reason, cannot have any practical legal effect upon a *then*

existing controversy." *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014).

Because the question of whether Ferreiras should have been granted probation

cannot have any effect on her current status, we cannot reach the merits of this

issue. "[A]n appellate court is generally without jurisdiction to reach the merits of

a moot appeal." *Commonwealth v. Branham*, 717 S.W.3d 572, 574 (Ky. App.

2025).

Furthermore, even if this issue was not moot, a brief examination of

the record shows that the trial court actually did consider whether to grant

probation and rejected it for reasons within its sound discretion. "[T]he Court is of

the opinion that . . . imprisonment is necessary for the protection of the public

because probation, probation with an alternative sentencing plan or conditional

discharge would unduly depreciate the seriousness of the Defendant's crimes."

(Final Judgment, R. at 154.) Accordingly, whether by mootness or merits, we will not reverse the trial court's decision regarding Ferreiras's probation.

For her third and final issue on appeal, Ferreiras argues that Officer Ullrich lacked probable cause to arrest her. She contends that it was "impossible for [her] to disrupt a traffic stop because, as Officer Fritsch observed, she couldn't even walk without crutches." (Appellant's Brief at 18.) This is a conclusory argument at best, given that Ferreiras's jury found beyond a reasonable doubt that she *did* disrupt the traffic stop. However, we need not consider this argument further because the Commonwealth correctly points out that Ferreiras has failed to identify where this issue was raised before the trial court and thus preserved for appellate review. "The Court of Appeals is without authority to review issues not raised in or decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989).

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment and sentence.


ALL CONCUR.


-14-

BRIEFS FOR APPELLANT:

Justin M. Whittaker
Cincinnati, Ohio

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky